IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| JOSE DANIEL CARDENAS-RODRIGUEZ, #56834-177, | § § § | |
| Movant, | § § | |
| v. | § § | Civil No. 1:19-CV-0153-C-BU |
| | § § | Criminal No. 1:18-CR-016-01-C |
| UNITED STATES OF AMERICA, | § § | |
| Respondent. | § § | |

**PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS**

The Court has under consideration Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. Cv. Dkt. No. 1. On October 2, 2019, the District Court referred the motion to the undersigned for an evidentiary hearing on Movant's claim for relief based upon allegations that counsel was ineffective for failing to file a notice of appeal and a recommendation on that claim. *See* Cv. Dkt. No. 9. On January 16, 2020, the undersigned held an evidentiary hearing, heard sworn testimony from Movant and his former attorney Kenneth Leggett ("Leggett"), and took the matter under advisement pending written recommendation. For the reasons explained below, the District Court should deny the ineffective assistance of counsel claim in Movant's motion to vacate.

**I. PROCEDURAL HISTORY**

Movant was arrested on September 29, 2017 by the Mitchell County Sheriff's Office following a traffic stop during which a Sheriff's deputy discovered the equipment and devices at issue in this case. *See USA v. Cardenas-Rodriguez*, No. 1:18-CR-00016-C (01) (N.D. Tex.) (Cr. Dkt. No. 18). On February 14, 2018, Movant was indicted by the federal government on one

count of illegal possession, production, or trafficking of device-making equipment and one count of possession of unauthorized and counterfeit access devices. *See* Cr. Dkt. No. 1. These counts carried maximum potential prison sentences of fifteen years and ten years, respectively. Under the Criminal Justice Act, the Court appointed Leggett to represent Movant through any appeal. *See* Cr. Dkt. No. 6.

Movant entered a plea before United States Magistrate Judge E. Scott Frost on March 29, 2018, pleading guilty to the second count in the indictment—possession of unauthorized and counterfeit access devices. *See* Cr. Dkt. No. 16. As part of his Plea Agreement, Movant waived his right to appeal or otherwise challenge his sentence, except "(a) to bring a direct appeal of (i) a sentence exceeding the statutory maximum punishment, or (ii) an arithmetic error at sentencing, (b) to challenge the voluntariness of the defendant's plea of guilty or this waiver, and (c) to bring a claim of ineffective assistance of counsel." *Id.* ¶ 12.

The Presentence Investigative Report ("PSR") reflected a Guideline Imprisonment Range of 57 months to 71 months. The PSR's calculation was based on an intended loss amount of $1,683,254.18 and not the actual loss amount ($13,128.11). Leggett objected to use of the intended loss figure and the resulting addition of 16 points. At sentencing on July 13, 2018, the district judge overruled the objections and imposed a sentence of 71 months imprisonment, within both the guideline range and statutory maximum. The imprisonment was to be followed by a term of three years supervised release, restitution in the amount of $13,128.11, and a special assessment of $100.00. *See* Cr. Dkt. No. 32. Movant did not appeal.

Movant, represented by new counsel, William E. Jones, Jr., commenced the present action on July 8, 2019, by filing a motion to vacate under 28 U.S.C. § 2255. *See* Cv. Dkt. No. 1. In his motion to vacate, Movant makes two general claims: 1) that his plea was not made knowingly or

voluntarily, and 2) that his trial attorney provided ineffective assistance of counsel by not filing a notice to appeal as requested. *See id*. The Government filed a response and appendix, disputing Movant's first claim and requesting an evidentiary hearing on the second, noting that factual questions regarding counsel's alleged failure to file an appeal cannot be resolved based on affidavits alone. *See* Cv. Dkt. Nos. 6, 7.

The Court referred Movant's motion to the undersigned for a limited evidentiary hearing on Movant's claim that counsel was ineffective for failing to file a notice of appeal. *See* Cv. Dkt. No. 9. Subsequent to the referral, the Court permitted attorney Jones to withdraw. *See* Cv. Dkt. No. 11. Acting upon the referral order, the undersigned set an evidentiary hearing and appointed the Office of the Federal Public Defender to represent Movant at the hearing and to file any objections to this recommendation. *See* Cv. Dkt. No. 12. The undersigned conducted the evidentiary hearing on January 16, 2020. *See* Cv. Dkt. No. 26. Following the hearing, Cardenas filed a "Motion to Supplement the Record." *See* Cv. Dkt. No. 25. By separate order, the Court has granted that motion. Accordingly, the Court has considered the testimony at the hearing and the supplemental evidence.

## II. SUMMARY OF TESTIMONY

The only witnesses at the hearing were Movant and his former attorney, Leggett. Relevant portions of the testimony are summarized below.

**A. Testimony of Movant**

Movant testified that he first saw Leggett five months after he was arrested by the state authorities. Following his federal indictment, Leggett represented him in connection with the federal charges. During the representation, Movant and Leggett discussed the option of pleading guilty and went over the resulting plea agreement. Movant and Leggett conversed in English,

3

although an interpreter was present at that time. Leggett advised him that if he pled guilty his Total Offense Level would be approximately 13-14 points and that he could expect a range of imprisonment between 12 and 24 months.[1] Movant denied that Leggett discussed with him the calculation of the loss amount, that it could be near $1.6 million, or might result in additional points to his Total Offense Level.

According to Movant, Leggett advised him that he would have to plead guilty at that time because his trial was, Movant thought, the next day.[2] Additionally, Leggett advised Movant that in exchange for his plea of guilty to the federal charges, the District Attorney had agreed to dismiss the state charges. Movant testified that he and Leggett discussed the waiver of right to appeal. Ultimately, Movant decided to plead guilty. After entering his plea of guilty, Movant received the PSR but did not see Leggett again until his sentencing hearing. When asked if he exchanged letters with Leggett regarding the PSR contents, Movant testified that he "sent more letters than I received."[3]

At sentencing, Movant was surprised by his sentence of 71 months which was "more than three times" what he expected. Immediately following imposition of his sentence, Movant asked Leggett, "Are we going to appeal?" to which Leggett responded, "There is nothing else to do. See me back in one year." Based on this exchange, Movant believed he had instructed Leggett to appeal. According to Movant, he thought appealing was "the obvious thing to do" since the sentence was more than three times what he expected, the sentence was the maximum within the

---

[1] Contradictorily, Movant states in his § 2255 motion that he expected that his maximum sentence would be 36 months. *See* Cv. Dkt. No. 1. However, during the hearing, he testified that this figure came from attorney Jones based on Jones' review of similar cases.
[2] Movant entered his guilty plea on March 29, 2018 (Cr. Dkt. No. 19), and his trial was scheduled for April 2, 2018 (Cr. Dkt. No. 14).
[3] The Court notes that Movant did not seek to introduce copies of any letters received from Leggett nor testify to the contents of his letters to Leggett, if any.

guideline range, and he did not have a criminal record. Movant testified that he did not speak with Leggett again after his sentencing hearing.[4] He also never spoke with Leggett post-sentencing regarding his state charges and does not currently know what happened to those charges.

**B. Testimony of attorney Ken Leggett**

Leggett testified that he was appointed to represent Movant in Mitchell County in late 2017 and in the federal case in 2018. Leggett negotiated a plea agreement with the federal government in which Movant would plead guilty to the less serious offense in the indictment in exchange for the government dismissing, after sentencing, the more serious offense.[5] He also negotiated an agreement with the District Attorney for the dismissal of Movant's state charges in exchange for Movant pleading guilty to the federal charge.

After Leggett received the proposed Plea Agreement from the federal government, he visited with Movant in the jail. Although he and Movant communicated in English, Leggett took an interpreter with him. When asked if he specifically reviewed the waiver of appeal with Movant, Leggett testified they reviewed the proposed Plea Agreement "line by line" and that Movant appeared to understand "the whole agreement." Leggett testified that they also reviewed the proposed Factual Resume and Plea Agreement Supplement.

Regarding the potential sentence, Leggett and Movant discussed an expected range of between 18 and 24 months. They also discussed the statutory range for the two counts and the need to "get rid of the big one."[6] Leggett testified that he was concerned that the guideline range

---

[4] Movant alleges in his § 2255 motion that he instructed Leggett to appeal and that he "repeated that instruction in numerous phone calls." *See* Cv. Dkt. No. 1.
[5] As noted in Section I, Count 1 carried a maximum potential prison sentence of fifteen years and Count 2 (to which Movant pled guilty) carried a maximum potential prison sentence of ten years. As part of Movant's Plea Agreement, the government agreed to dismiss, after sentencing, the charges in Count 1, and did so.
[6] Count 1 in the federal indictment. *See id*.

5

could be high because Movant was charged with possession of a large number of magnetic strips and identifying information that could be made into credit cards. The Assistant U.S. Attorney indicated to Leggett that the aggregate credit limit of those cards was between $1 million and $2 million and, Leggett thought, this amount would have "jacked up his offense conduct level" by an additional 14-16 points. Although Leggett's testimony was not clear regarding whether he specifically discussed the loss calculation with Movant, he testified that they discussed a guideline range of "60-72, 71 months."[7] Based on Movant's lack of criminal history, Leggett testified that he thought Movant "had a shot" at the lower end of the range and discussed that possibility with Movant, adding, "We talked about all of it." Leggett adamantly denied promising Movant that he would receive a sentence no higher than 24-months, saying "You cannot make that kind of a promise to a client in federal court."

Leggett testified that at the sentencing hearing, Movant was upset after the 71-month sentence was announced and initially told him that he wanted to appeal. But then Leggett had another "brief discussion" with him. During that discussion Leggett advised Movant that filing an appeal would result in him being prosecuted on the state charges because Leggett's agreement with the District Attorney was conditioned on Movant pleading guilty to the federal charge.[8] Leggett also told Movant that while he waived his right to appeal, because Leggett objected to the PSR and made arguments at his sentencing hearing, "that there's stuff that we could talk

---

[7] This guideline range is consistent with the higher loss calculation of between $1 million and $2 million.

[8] Movant was permitted to supplement the record in this matter with contemporaneous notes taken by Leggett regarding Leggett's discussions with the District Attorney which, Movant argues, support a conclusion that the District Attorney intended to "defer" to the federal government rather than condition the dismissal of the state charges on federal prosecution. While the undersigned considered these notes, standing alone they did not compel a different outcome. The undersigned was able to assess the credibility of Leggett during his testimony and finds that his testimony to the effect that the dismissal of the state charges was conditioned on Movant pleading guilty to the federal charge is more credible. Moreover, the undersigned finds that, even if the District Attorney agreed to "defer" to the federal authorities, such deference could still be conditioned on Movant pleading guilty to the federal charge.

6

about in the Fifth Circuit." Leggett advised Movant that he had 14 days to file a notice of appeal, to think about it, and discuss it with his family. If Movant still wanted to appeal, he should let Leggett know and Leggett would file it. When they parted that day, Leggett was under the impression that Movant would contact him if he wanted to appeal. Movant never called Leggett, wrote him, or otherwise indicated again that he wanted to appeal. Leggett had post-sentencing communications with Movant regarding the federal government's need for financial information. At no time during those communications did Movant indicate to Leggett that he wanted to appeal. Leggett also testified by way of affidavit that he and Movant

> briefly discussed the right [to appeal] in light of his waiver of appeal in the plea agreement and the 32nd District Court's (Texas) District Attorney's agreement to dismiss State charges upon sentencing in this [federal] case. Mr. Cardenas-Rodriguez did not want to appeal. I told him that if he changed his mind to let me know but be aware that as set forth by the Court he had fourteen (14) days to file a Notice of Appeal.

Cv. Dkt. No. 7.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Movant asserts that Leggett rendered ineffective assistance of counsel under the Sixth Amendment when counsel failed to file a notice of appeal as requested. As a part of this inquiry, the undersigned also considers whether Leggett rendered ineffective assistance of counsel by failing to fulfill his consultation obligations regarding the appeal.[9]

**A. Applicable Law**

Sixth Amendment ineffective assistance of counsel claims are evaluated under the two-

---

[9] Movant did not explicitly raise this claim in his § 2255 motion, nor did he seek leave to amend his motion to include it. However, prior to the evidentiary hearing, Movant's appointed counsel submitted proposed findings of fact and law regarding the consultation issue. *See* Cv. Dkt. No. 21. The undersigned notes that the district judge's order of reference limits the undersigned's review to Movant's claim that trial counsel failed to file a notice of appeal as requested. However, to the extent *Flores-Ortega* requires a court to examine whether counsel adequately consulted with a defendant about the right to an appeal, the undersigned submits the additional findings and recommendation.

prong test set by the Supreme Court in *Strickland v Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court held that criminal defendants have a Sixth Amendment right to "reasonably effective" assistance of counsel. 466 U.S. at 687. Under the *Strickland* test, a defendant claiming ineffective assistance of counsel must show (1) that defense counsel's performance was deficient and (2) that this deficient performance in fact prejudiced the defendant. *Id.* Deficient performance is shown if counsel's "representation fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In applying the test, "there is no reason for a court deciding an ineffective assistance of counsel claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. The *Strickland* analysis applies "in federal collateral proceedings." *Id*. (applying the test in a federal habeas action under 28 U.S.C. § 2254).

In *Roe v. Flores-Ortega*, the Supreme Court applied *Strickland* to claims "that counsel was constitutionally ineffective for failing to file a notice of appeal." 528 U.S. 470, 477 (2000). In such cases, the *Strickland* analysis "begins with the question whether counsel 'consulted' with the defendant regarding an appeal." *United States v. Cong Van Pham*, 722 F.3d 320, 323 (5th Cir. 2013) (quoting *Flores-Ortega*, 528 U.S. at 478). A consultation occurs where counsel "advis[es] the defendant about the advantages and disadvantages of taking an appeal, and ma[kes] a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478.

If a consultation has occurred, "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."

*Id*. In cases where "an attorney perform[s] deficiently in failing to file a notice of appeal despite the defendant's express instructions, prejudice is presumed 'with no further showing from the defendant of the merits of his underlying claims.'" *Garza v. Idaho*, 139 S. Ct. 738, 750 (2019) (citing *Flores-Ortega*, 528 U.S. at 484). Prejudice is presumed because counsel's deficient performance "deprives a defendant of an appeal that he otherwise would have taken." *Flores-Ortega,* 528 U.S. at 484. "[T]he presumption of prejudice recognized in *Flores-Ortega* applies regardless of whether a defendant has signed an appeal waiver." *Garza*, 139 S. Ct. at 749. "[I]f the petitioner is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and the petitioner will be entitled to file an out-of-time appeal . . . ." *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007).

If consultation has not occurred, the court must ask whether counsel had an obligation to consult with the defendant on the issue of filing an appeal. *Flores-Ortega*, 528 U.S. at 478. A lawyer who fails to consult where he has a duty to do so renders deficient performance. *See id*. Generally,

> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Flores-Ortega*, 528 U.S. at 480.

A defendant can reasonably demonstrate an interest in appealing by an "ample

demonstration of [the defendant's] interest in doing something to change the outcome of his sentencing through additional proceedings." *Pham*, 722 F.3d 320, 325 (5th Cir. 2013). However, merely expressing dissatisfaction regarding the outcome is not sufficient. *See United States v. Casarez*, 304 F.App'x. 325, 325 (5th Cir. 2008) (per curiam) (finding that "[a]lthough [the defendant] was upset about sentencing matters before and after the sentencing hearing, [the defendant] did not express to counsel any interest in appealing the sentence either when [the defendant] spoke to counsel after the sentencing hearing or when [the defendant] called counsel's office.") (cited in *Pham*).

In framing the analysis set forth in *Flores-Ortega*, the Supreme Court noted it's prior guidance in *Strickland* that, given the "variety of circumstances faced by defense counsel," courts must assess the reasonableness of their conduct within the context of the particular facts they face and as of the time they face them. *Flores-Ortega* 528 U.S. at 477 (quoting *Strickland*, 466 U.S. at 689). In other words, the inquiry is one of "circumstance-specific reasonableness." *Id.* at 478. Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 477 (quoting *Strickland*, 466 U.S. at 689). Nevertheless, "[t]he Supreme Court predicted that district courts would find a duty to consult 'in the vast majority of cases.'" *Pham*, 722 F.3d at 324 (quoting *Flores-Ortega*, 528 U.S. at 481).

Finally, if a defendant claims that his attorney breached the duty to consult, courts do not presume prejudice under the second prong of *Strickland*. Instead, the "defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484.

### B. Analysis

1. <u>Did Movant give a clear, specific direction to appeal immediately following the sentencing hearing?</u>

The evidence is undisputed that Movant was upset upon hearing his sentence. Movant testified that immediately following imposition of his sentence, he asked Leggett, "Are we going to appeal?" Notably, this question was asked in the immediate and emotional aftermath of receiving a sentence that was more than three times higher than Movant expected. At that moment, Leggett had not consulted with him regarding the advantages and disadvantages of filing an appeal. Indeed, there appears to be no dispute that meaningful consultation as defined by *Flores-Ortega* was not even possible until Movant received his sentence. Given this context and assessing the credibility of the evidence presented, the undersigned finds that the question, "Are we going to appeal?", was not a clear, unambiguous, and specific direction to file an appeal. The most reasonable construction of this question given the circumstances is as a solicitation for legal advice on the issue of appeal rather than as a clear direction to appeal.

2. <u>In the absence of a clear, specific direction, did Leggett have a duty to consult with Movant regarding an appeal?</u>

Based upon the finding that Movant's question post-sentencing was not a clear direction to appeal, *Flores-Ortega* requires the court to ask whether Leggett had a duty to consult with him on this issue. In determining whether Leggett had a duty to consult, the court must consider all the information Leggett knew or should have known. Here, that includes the fact that Movant expected a much lower sentence and was upset by the sentence imposed.

Considering all these circumstances, and the testimony offered at the evidentiary hearing, the undersigned finds that by asking "Are we going to appeal?" Movant "reasonably

demonstrated" to Leggett that he was interested in appealing. *See Flores-Ortega*, 528 U.S. at 480. This triggered Leggett's duty to consult with Movant about the filing of an appeal.

The duty to consult can be triggered *either* by a demonstration that "a rational defendant would want to appeal" or "that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* Because there is credible evidence to support a finding that Movant reasonably demonstrated his interest in appealing, the undersigned need not address the question of whether a rational defendant would seek to appeal under these circumstances.

3. Did Leggett properly discharge his duty of consultation?

Once it is established that Leggett had a duty to consult with Movant about filing an appeal, the Court must determine whether Leggett properly discharged that duty. Consultation requires that counsel (a) advise the defendant of the advantages and disadvantages of taking an appeal, and (b) make a reasonable effort to discover the defendant's wishes. *Flores-Ortega,* 528 U.S. 478. While Movant and Leggett had conversations regarding Movant's appellate rights prior to sentencing, Movant has not alleged that he communicated a desire to appeal to Leggett prior to his sentencing hearing. Therefore, the present inquiry will focus on Leggett's communications with Movant after the sentence was imposed.[10]

(a) Did Leggett advise Movant of the advantages and disadvantages of taking an appeal?

In considering Leggett's performance under the first "consultation" prong, the undersigned examined the only evidence adduced on that issue, which is the testimony of Movant and Leggett. Regarding whether Leggett advised Movant of the advantages and disadvantages of taking an appeal immediately following imposition of his sentence, Movant testified:

---

[10] *See Pham*, 722 F.3d at 324 n.16 (noting that while there is no "'mechanical rule' that consultation must always follow sentencing," a "counsel's cursory discussion *before* sentencing [does] not compensate for the complete failure to mention the possibility of appeal *after* sentencing") (emphasis in original).

Q:  And did you discuss with Mr. Leggett whether you should appeal or not?

A:  At the end?

Q:  Yes.

A:  I asked him, are we going to appeal?  And he said, there is nothing else to do.  And he said, see me back in one year, and he left.

In contrast, Leggett testified:

Q:  And after that point [imposition of sentence], did Mr. Cardenas instruct you to file a notice of appeal?

A:  Initially he said he wanted to appeal, that's correct.

Q:  All right.  And—

A:  But—

Q:  Did you discuss that with him?

A:  We had another brief discussion.  Mr. Cardenas was indicted first in the state system, and because of the number of identities and number of Social Security—the Social Security numbers and those kind of things in his possession, he was indicted in Mitchell County on a first-degree felony, fraudulent possession of identifying information, a first-degree felony in the State. And my agreement with Mr. Cardenas and Ricky Thompson, the District Attorney in the 32nd Judicial District, was that when Cardenas was—because they had—the federal government had talked to Mr. Thompson about Mr. Cardenas's case and indicated that they were going to—they were going to indict him in the federal system because of the number of the things that he had too. And so Mr. Thompson was willing to let the federal government prosecute Mr. Cardenas, but he wanted to make sure that, because of all the number of things that Cardenas had in his possession that he didn't have, that he was appropriately punished.  And so he said that if we—if he was

13

punished in the federal system, that he would dismiss the first-degree felony case in the State, and that was our agreement. Had Mr. Cardenas appealed, Mr. Thompson would have picked back up the state case and prosecuted him in Mitchell County.

    Q: Did you advise Mr. Cardenas of that concern?

    A: I did, and we—he said he wanted to appeal, and I told him that if he did, that he would be prosecuted in Mitchell County and he needed to think about that. And I told him that, you've got 14 days; if you want—if you think about it, talk to your family, want to appeal, let me know, and I'll do it.

    \*\*\*

    Q: All right. And so in this case, you had a dispute with the PSR's guidelines; you filed objections; you argued those objections?

    A: Yes. There were written objections, yes, sir.

    Q: All right. And so under the rubric of mathematical errors, it's conceivable that that could—that that could have gotten through the waiver of appeal?

    A: I told Mr. Cardenas that the—because the—at the sentencing hearing, after that was finished and he was displeased with the 71 months, that while he waived his appeal, that since we made objections and there were things that we talked about in sentencing, that there's stuff that we could talk about in the Fifth Circuit.

    Q: Now, your concern as far as—post-sentencing, your discussion with him, you indicated a concern that—that appealing might interfere with the resolution of the Mitchell County cases; is that right?

    A: Would interfere. It would. It would bring that case back up, yes, sir.

    Q: All right. Do you think that a successful appeal would have done that, or just the fact

of an appeal?

    A:  Either one.

The substance of Movant's testimony on this issue is that Leggett told him there was nothing he could do and then Leggett simply departed.  In contrast, Leggett testified in detail how he discussed with Movant both the advantages and disadvantages of filing an appeal and asked him to consider both in consultation with his family before making a decision.  On this point, the undersigned finds Leggett's testimony more credible than Movant's and, accordingly, finds that Leggett advised Movant of the advantages and disadvantages of filing an appeal.

    (b)  <u>Did Leggett make a reasonable effort to discover the Movant's wishes?</u>

Having concluded that Leggett advised Movant of the advantages and disadvantages of taking an appeal, the Court must consider the next "consultation" prong—whether Leggett made a reasonable effort to discover Movant's wishes regarding an appeal.

Movant's testimony is that, based on the brief, post-sentencing exchange described above, Movant believed he had instructed Leggett to appeal.  Moreover, he believed that appealing was "the obvious thing to do" since he received a sentence more than three times what he expected, the sentence was the maximum within the guideline range, and he did not have a criminal record.

Movant's statements about his communication with Leggett after his sentencing hearing have been contradictory.  In his motion, Movant alleges that he repeated his instruction to appeal in "numerous phone calls" to Leggett.  However, at the evidentiary hearing, Movant did not testify as to any phone calls with Leggett post-sentencing and instead testified that he did not speak with Leggett again after his sentencing hearing.  Specifically, Movant testified:

    Q:  Okay.  Was there any discussion after your federal sentencing about your state charges?  Okay.  I'm sorry.  I—

A: I personally did not talk to the lawyer. My family was the only one that talked to him.

Q: All right. At the time of your sentencing, after you had received the sentence, did you have a discussion with Mr. Leggett about your state charges?

A: No.

\*\*\*

Q: Correct, Now, when you allegedly asked Mr. Leggett to file an appeal, I understood your discussion with Mr. Sloan was that you did not talk about your state case at all?

A: No.

Q: So you don't recall that he talked to you about not pursuing an appeal because he was trying to get your state charges dismissed?

A: It was the same charge.

Q: So what do you think happened to your state charges?

A: That they would run concurrently.

Q: Did you go to state court and plead guilty?

A: No. I never went to state court or county court.

Q: So what do you think happened to your state charge if you never went to court?

A: I don't know.

Movant's testimony failed to include any references to or descriptions of the "numerous phone calls" alleged in his motion. Instead, Movant testified that only his family talked to Leggett after his sentencing. Even assuming this is true, Movant offered no testimony during his § 2255 hearing from family members, either in person or via affidavit, regarding conversations with Leggett.

16

In contrast, as described above, Leggett testified that he advised Movant that filing an appeal would interfere with the resolution of his state charges and would "bring that case back up." He also informed Movant that, because they had objected to the PSR and made arguments at his sentencing hearing, they had "stuff that we could talk about at the Fifth Circuit." Leggett then advised him that he had 14 days to file a notice of appeal. Leggett told Movant that he should think about it, discuss it with his family and, if he still wanted to appeal, to let him know and he would file it. Leggett also testified that when they parted following sentencing, Leggett was under the impression that Movant would contact him if he wanted to appeal. However, according to Leggett's testimony, Movant never called him, wrote to him, or otherwise made any further indication that he wanted to appeal. In addition, Leggett testified that he had post-sentencing communications with Movant regarding the federal government's need for financial information, but that at no time during those communications did Movant indicate he wanted to appeal.

The undersigned finds Leggett's testimony on this issue more credible than that of the Movant. Accordingly, the undersigned believes that Leggett made a reasonable effort after sentencing to discover Movant's wishes regarding an appeal. He counseled Movant to use the 14-day period to think about an appeal in consultation with his family, and then let Leggett know if he still wanted to appeal. There was no credible evidence that Movant objected to this approach, or otherwise made any effort, either directly himself or indirectly through his family, to contact Leggett regarding an appeal. The first indication in the record that Movant wanted to appeal was the filing of his § 2255 motion five days before the expiration of his one-year limitation period.

For the foregoing reasons, the undersigned finds that Leggett made a reasonable effort to discover Movant's wishes regarding an appeal and otherwise discharged his duty to consult with Movant regarding an appeal.

4. <u>Did Leggett fail to follow the Movant's express instructions after consultation?</u>

Having determined that Leggett "consulted" with Movant, "the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only for failing to follow the defendant's express instruction." *Flores-Ortega*, 528 U.S. at 478. Here, there was no evidence presented that Movant, either directly or through his family, communicated a post-consultation desire to appeal to Leggett. No evidence was presented at the hearing to support Movant's claim in his motion that he repeated his instruction to appeal in "numerous phone calls" or even a single phone call.

To the contrary, Movant testified that while he thought appealing was "the obvious thing to do," he did not speak to Leggett again after his sentencing. No evidence was offered that Movant's family spoke to Leggett after sentencing, either about Movant's appeal or anything else. The only evidence regarding contact or communications between Leggett and Movant and/or his family was Leggett's testimony about visiting with Movant regarding his financial history. Admittedly, it was unclear, from the evidence presented at the hearing, when Leggett, relative to the 14-day appellate window, communicated with Movant regarding his financial history. Nevertheless, there was no evidence that Movant or his family followed up with Leggett at any time *after* the 14-day appellate deadline — or at any other time before filing his § 2255 motion five days before the expiration of the one-year period of limitation to file such a motion — to ensure his appeal had been filed or to ask why it had not been filed.

Having considered the testimony and evidence offered in the context of the particular facts

18

faced by Leggett as of the time he faced them, and after having assessed the credibility of both Movant's and Leggett's testimony, and after applying appropriate deference to this Court's scrutiny of Leggett's performance, the undersigned finds that Movant has failed to establish by a preponderance that he requested an appeal. *See Tapp*, 491 F.3d at 266. The District Court should therefore conclude that Leggett's performance was not deficient under the performance prong of *Strickland* for failing to file a notice of appeal. Absent a showing of deficient performance under the first prong of the *Strickland* test, the Court has no need to address whether Movant was prejudiced by such deficiency under *Strickland's* second prong.

## IV. RECOMMENDATION

Because the findings support the conclusion that Leggett fulfilled his consultation duty regarding the appeal, and because Movant has failed to demonstrate by a preponderance of evidence that he requested an appeal subsequent to that consultation, the District Court should deny Movant's claim in his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence that counsel was ineffective for failing to file a notice of appeal.

## V. RIGHT TO OBJECT

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the

aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

It is so ordered this 21st day of February, 2020.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE